**Richmond**

JOSEPH D. MORRISSEY

v.

COMMONWEALTH OF VIRGINIA

No. 1635-91-2

Decided March 30, 1993

■■■■■■■■■■■■■■■■
■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■

COUNSEL

Roger L. Gregory (Wilder & Gregory, on brief), for appellant.

W. Mark Dunn, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief) for appellee.

OPINION

**MOON, J.**—Joseph D. Morrissey, Commonwealth's Attorney for the City of Richmond, contends the evidence was insufficient to sustain his contempt of court conviction for which he was sentenced to serve five days in the city jail. Because he sent a trial judge a letter containing a threat ''calculated to embarrass, hinder, or obstruct the court in the administration of justice,'' we affirm the conviction.

## I.

On June 17, 1991, in a case styled *Commonwealth v. Silva,* Steven Buck, Assistant Commonwealth Attorney of the City of Richmond, presented a plea agreement to Judge John P. Driscoll, substitute general district court judge. Judge Driscoll refused to accept the plea agreement and commented on Buck's lack of preparation and the lack of organization and laziness of the prosecutor's office (Mr. Morrissey's office).

After Buck and Eric Page, defense counsel, advised Morrissey of what had happened, Morrissey, who was busy in another courtroom, came to Judge Driscoll's courtroom. Morrissey told the judge that the plea in the *Silva* case was acceptable and that the case would not be prosecuted if the plea agreement was not accepted. An excerpt of Morrissey's testimony follows:

Q.   What happened when you approached the court?

A.   I asked the Court if there is anything I can do with respect to Commonwealth v. Silva. And the judge said either, or inferred, go on. And I said, I have reviewed the evidence with the defense attorney. I have reviewed the evidence with Mr. Buck, and the

Commonwealth is satisfied — these are almost my exact words — that that was an acceptable plea agreement. . . . And Mr. Driscoll said . . . "I don't know why you are here. The case has already been transferred." It was at that time that Eric Page was standing to my right, interjected and he said "Judge, the case hasn't been transferred. You ordered the Sergeant [sic] materials to be obtained from South Richmond and everything to be brought back before you."

Judge Driscoll did not acknowledge Mr. Page's comment. And that is when Mr. Buck had some type of colloquy with the court. What he said was consistent with my recollection.[1]

Q. What did the court tell you?

A. The court essentially said that it did not, did not want to hear from me, and didn't want me in court, or something to that effect. . . . And I pointed out to the court the diligent efforts that Mr. Buck had made. . . . He then admonished or stated something to the effect that I don't want to hear any more. The case has been transferred. And my final response was, thank you very much, your Honor. And I walked out of the courtroom.

On June 19, 1991, Morrissey wrote a letter to Judge Driscoll defending the actions of the Commonwealth Attorney's staff and objecting to Judge Driscoll's treatment of him and his Assistant Commonwealth Attorney.

The June 19, 1991 letter stated the following:

Dear Mr. Driscoll:

It has been brought to my attention, by several individuals, that you were both highly critical of, and abusive towards, Assistant Commonwealth's Attorney, Steven Buck, Monday morning, June 17, 1991. Apparently, during the case of *Commonwealth v. Silva*, you severely rebuked Mr. Buck for not having *Sargeant* material available. Additionally, I was told that you used your position (i.e. substitute Judge) to generally criticize the Richmond Commonwealth's Attorney's Office.

---

[1] Mr. Buck testified earlier at trial that he interjected "at that point that the case had not been transferred, yet, because the Sergeant material hadn't arrived. And he ordered me to obtain Sergeant material from Richmond South. So, um, after, after that was said, um, he said, Judge Driscoll stated that didn't matter to him, that Mr. Morrissey's presence was not welcome."

Please be advised that on his own volition, Mr. Buck drove to Henrico County on Friday, June 14, 1991 in order to obtain one packet of *Sargeant* material. Additionally, he called the Southside Clerk's Office on two occasions to get the second packet of *Sargeant* material. Unfortunately, the Southside Clerk's office was unable to get the *Sargeant* material to Mr. Buck as quickly as Mr. Buck would have liked. Accordingly, your criticism of Mr. Buck, including your caustic and derogatory remarks from the bench, were entirely uncalled for.

Mr. Buck, former Law Clerk for Justice Poff on the Virginia Supreme Court, was described by everyone in the Court Room on June 17 as thoroughly prepared, extremely competent and most courteous. He did not deserve your verbal lambasting.

In the future, should you have any criticism of this Office or specifically, one of My [sic] Assistant Commonwealth's Attorneys, you are directed to set up an appointment with Deputy Commonwealth's Attorney, William H. Parcell, III so that you can voice your complaints in a more professional manner.

Finally, five police officers and one attorney observed the colloquy between you and me in the Courtroom. Although I was unfailingly courteous to you, it was evident to everybody that you were trying to bait me-perhaps so you could hold me in contempt. Please be assured Mr. Driscoll that if that behavior *ever*, *ever*, happens again, I will not be so kind as to merely draft you a letter of indignation.

Sincerely yours,

/s/

Joseph D. Morrissey

Commonwealth's Attorney

The letter was received by Judge Driscoll on June 24, 1991, and the show cause summons against Morrissey for contempt was issued on June 28, 1991. On the return date set for the original trial of this matter, Judge Driscoll recused himself. In his remarks from the bench in connection with his recusal, Judge Driscoll made the following comments concerning the letter: "[T]here is no way of determining from the language used in that letter what is contemplated. . . . I don't

know. Nonetheless, it would appear that this is an attempt to interfere with the administration of justice."

Morrissey was found guilty of contempt in the General District Court of Richmond on July 18, 1991. The Circuit Court of Richmond affirmed the conviction, finding that the last paragraph of Morrissey's letter constituted a threat to Judge Driscoll in response to judicial conduct.

## II.

On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

" 'Contempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute.' Any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice is contempt." *Carter v. Commonwealth*, 2 Va. App. 392, 396, 345 S.E.2d 5, 7-8 (1986).

Morrissey contends that the letter threatens only to take some legal redress, which he had a right to do. Morrissey testified that his statement, "[I]f that behavior *ever, ever*, happens again, I will not be so kind as to merely draft you a letter of indignation," meant that he would "file a complaint with the Judicial Inquiry and Review Commission."

Even were we to give to the letter the limited interpretation Morrissey ascribes to it, the letter still constitutes a threat that is calculated to hinder or obstruct justice. By any description it is a threat. The trial judge, in dealing with Morrissey in the future, would necessarily always face the prospect of having Morrissey follow through on his threat. If, for example, the trial judge believed Morrissey's conduct in a particular case was improper or disruptive, the trial judge necessarily could take appropriate action knowing that Morrissey might take action of some unspecified nature, violent or otherwise. Morrissey had no right *to threaten* to do anything.

Morrissey argues that we should only consider what took place in the courtroom between him and the judge. He contends that the letter referred the judge to "that behavior" and did not refer to Judge

Driscoll's remarks made in refusing to accept the plea agreement. If we accept Morrissey's position that he was not threatening the judge if he refused another plea agreement but was only referring to the treatment of Morrissey similar to what he received on the date in question, we still must construe the evidence in the light most favorable to the Commonwealth. We conclude that Judge Driscoll could reasonably have believed that Morrissey was out of order in proceeding to argue the merits of the plea agreement when the court wished to take up other matters. In this light, the judge was merely advising Morrissey to desist and to leave.

We are not here concerned with mere criticism of the judge's conduct. Morrissey could have written to the Judicial Inquiry and Review Commission without fear of legal ramifications. In fact, he did so. However, in addition, Morrissey wrote a letter to the judge that "directed" the judge to act in a certain way regarding the prosecutor's office and Morrissey in particular. He also explicitly threatened action of an unspecified nature if the judge behaved in a way toward Morrissey comparable to his June 17, 1991 encounter.

The Texas Circuit Court of Appeals, Fifth Circuit, in *Cooke v. United States*, 295 F. 292 (5th Cir. 1923), heard a similar case where the defendant wrote an otherwise respectful letter to the judge but "also impliedly threatened Judge Wilson with disqualification proceedings, in the event he refused to recuse himself." *Id.* at 296. The court held that:

> The natural tendency of the letter was to destroy the calm and dispassionate consideration by Judge Wilson of the pending matters, which it was his duty to give. The aim of the law in proceedings for contempt of this nature is not to protect the judge from criticism, to save him the annoyance of it, but to keep his usefulness unimpaired by matter, which would be likely to affect a judicial and impartial attitude in matters to be decided by him. The question is not whether the letter, in fact, had this effect upon Judge Wilson, but whether it was calculated to do so upon any judge, or calculated to create such an impression upon others, and so injure the administration of justice. . . . If the tendency of the letter was to injuriously affect the administration of justice, either in actuality or in reputation, it constituted a contempt. . . .

*Id.*

Similarly, Morrissey's letter was calculated to impair the judge's usefulness and was likely "to affect a judicial and impartial attitude in matters to be decided by him." *Id.*

We hold that Morrissey's action was "calculated to embarrass, hinder or obstruct the court in the administration of justice." *Carter* (cited p. 176) 2 Va. App. at 396, 345 S.E.2d at 7-8. Morrissey, by his own admission threatened to report Judge Driscoll to the Judicial Inquiry and Review Commission if Judge Driscoll ever behaved as he did on June 17, 1991. Whether Judge Driscoll was, in fact, intimidated is irrelevant. Our focus is on whether the action taken by Morrissey was *calculated* to obstruct the court in the administration of justice.

■ Morrissey contends that because he had a right to make such a report, the implied threat to do so is protected speech under the First Amendment. This argument is without merit. The threat to do a legal act is not *per se* protected speech. *Cf.* Code § 18.2-59; *Stein v. Commonwealth*, 12 Va. App. 65, 70-71, 402 S.E.2d 238, 241-42 (1991).

The question whether contemptuous language is protected by the First Amendment was addressed by the Virginia Supreme Court in *Weston v. Commonwealth*, 195 Va. 175, 77 S.E.2d 405 (1953). *Weston* phrased the test in the following manner: "Were [the utterances] 'obscene, contemptuous or insulting?' Did they constitute a clear and present danger or obstruction to the administration of justice?" *Id.* at 184, 77 S.E.2d at 410. The *Weston* court held that if the utterances presented a "clear and present danger or obstruction to the administration of justice," they were punishable as contempt and not protected by the First Amendment. *Id.*

The *Weston* test has been met. This letter constituted a clear and present threat to obstruct the administration of justice by controlling Judge Driscoll's behavior when an attorney before Judge Driscoll was a member of the Richmond Commonwealth Attorney's Office. The letter is not protected by the First Amendment.

Whether Morrissey was threatening violence against Judge Driscoll, as the trial judge found, or was threatening to report him to the Judicial Inquiry and Review Commission, as Morrissey contends, the threat was contemptuous. Morrissey contends that because his threat

was not an unequivocal threat of violence, as the judge found, the conviction must be reversed. However, Morrissey's argument presupposes that the threat is properly susceptible of some non-contemptuous meaning, *i.e.*, to report the judge to the Judicial Inquiry and Review Commission.

We hold that the threat made in the letter was contemptuous. It was either a threat of violence, as the trial judge found, or a threat to report Judge Driscoll to the Judicial Inquiry and Review Commission as Morrissey claims. Under either view, the conviction must be sustained. "When a trial court reaches the correct result for the wrong reason, its judgment will be upheld on appeal." *Dziarnowski v. Dziarnowski*, 14 Va. App. 758, 762, 418 S.E.2d 724, 726 (1992).

*Affirmed.*

Elder, J., and Fitzpatrick, J., concurred.