**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: JOSEPH D. MORRISSEY,
                              *Appellant.*          No. 02-1105

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Leonie M. Brinkema and Jerome B. Friedman, District Judges;
James C. Cacheris, Senior District Judge.
(MISC-97-16)

Argued: June 4, 2002

Decided: September 11, 2002

Before WIDENER, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Williams and Judge Motz concurred.

_____

### COUNSEL

**ARGUED:** Robert Henry Smallenberg, ROBERT H. SMALLEN-
BERG, P.C., Richmond, Virginia, for Appellant. Robert Harvey
Chappell, Jr., CHRISTIAN & BARTON, L.L.P., Richmond, Virginia,
for Disciplinary Enforcement Counsel. **ON BRIEF:** Roman Lifson,
CHRISTIAN & BARTON, L.L.P., Richmond, Virginia, for Disciplin-
ary Enforcement Counsel.

**OPINION**

WIDENER, Circuit Judge:

This is a case in which we affirm the disbarment of an attorney, instituted by a motion of the United States, filed by the United States Attorney for the Eastern District of Virginia on August 17, 2000, requesting the district court to enter an order that Joseph D. Morrissey show cause why he should not be disbarred due to violations of the Virginia Code of Professional Responsibility, specifically DR 1-102, A(3) and (4), which follow:[1]

   A.   A lawyer shall not:

        (3) Commit a crime or other deliberately wrongful act that reflects adversely on the lawyer's fitness to practice law.

        (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation which reflects adversely on a lawyer's fitness to practice law.

The motion recited that Morrissey had been found guilty on August 15, 2000 of violating 18 U.S.C. § 1001 when he lied to his probation officer about a conversation he had had with one Ted Grivetti.[2] It also charged that Morrissey had been found guilty of offering Grivetti free legal services in return for Grivetti's falsification of a community service report of Morrissey's hours performed for Habitat for Humanity. The motion charged that these violations occurred while Morrissey was on probation, and he previously had been suspended from practicing before that court.

On November 9, 2000, the district court entered its order, finding

---

[1] Those rules have been renumbered and slightly, but inconsequently, rewritten as Rules 8.4(b) and (c).

[2] 18 U.S.C. § 1001 makes criminal in such cases as here knowingly falsely concealing a material fact, or falsely making a material statement, or using any false document making a false statement.

that Morrissey had been adjudged to have violated the conditions of his probation by violating 18 U.S.C. § 1001 and condition no. 3 of the terms of his probation which required that he should "answer truthfully all inquiries of the probation officer," both violations "having been committed by the making of false statements to a United States probation officer" and that such acts were charged to have constituted misconduct within the meaning of Rule 102 A(4) mentioned above. It ordered, pursuant to Federal Rules of Disciplinary Enforcement (FRDE) V, A and X and Local Rule 83.1 I and L, that the motion of the government to disbar Morrissey be referred to a designated FRDE counsel for investigation and, if appropriate, prosecution in a formal disciplinary proceeding or other appropriate recommendation.

The attorney so appointed, R. Harvey Chappell, Jr., filed his report January 16, 2001, recommending that the court enter an order that Morrissey show cause why he should not be disciplined by disbarment based upon (1) a violation of DR 1-102 (A)(3) and (A)(4) and (2) Morrissey's "egregious conduct over a period of years" as shown by Appendix A, attached. Appended to that report was a documented Appendix of 16 incidents of disciplinary problems that Morrissey had had with the courts, both state and federal, commencing in March, 1986 and continuing through the decision of the district court of August 15, 2000, mentioned in the motion of the government filed August 17, 2000. The documentation, which includes some excerpts of hearing transcript, occupies some 250 pages of the Appendix filed in this case.

Following the report of the FRDE counsel, the district court entered its order on January 25, 2001, that Morrissey show cause why he should not be disbarred for (A) violation of Rules 102 (A)(3) and (A)(4) and (B) "the history of repeated professional misconduct," and requesting the chief judge of that court to appoint a panel of three judges to hear and decide the questions raised in the show cause order. That panel met on April 3, 2001. It considered the record, took the evidence of witnesses *ore tenus* in open court, and considered various exhibits. It filed its memorandum opinion December 21, 2001 and entered its order that same day, disbarring Morrissey, from which order this appeal is taken.

Among those incidents, documented by the report of the FRDE counsel and considered in the opinion of the three-judge court from which this appeal is taken, briefly are:

A 1986 fine in the Circuit Court of the City of Richmond for berating the judge and continuing to argue after the court's ruling; December, 1987 and May, 1988 fines for three occasions of contempt in the Circuit Court of Henrico County; two 1990 disciplinary proceedings before the Virginia State Bar Disciplinary Committee, one of which was dismissed on terms, the other of which was affirmed; a July, 1991 sentence of five days in jail for writing a threatening letter to a judge of the General District Court of the City of Richmond; a December, 1991 reprimand for engaging in a fist fight with opposing counsel in a criminal trial in the Circuit Court of the City of Richmond; an August, 1993 dismissal upon apology to the trial judge for amending a felony arrest warrant without leave of court; a 1993 six-month suspension from the practice of law by a three-judge Virginia court for his handling, as Commonwealth's Attorney, of a guilty plea in a rape case; an October, 1997 fine and jail sentence in the Circuit Court of Chesterfield County for an angry outburst at the presiding judge during a sentencing hearing; and the probation revocation proceeding earlier mentioned in this opinion. The opinion of the three-judge FRDE district court and its accompanying order of disbarment, appealed from here, are appended to this opinion.

The immediate incident from which this proceeding arises arose after Morrissey was no longer the Commonwealth's Attorney, and had returned to private practice, in his representation of one Joel Harris, a man of some political prominence who faced federal charges of drug distribution. In that capacity, Morrissey had interviewed a prospective witness in the trial who had testified before a state grand jury. Morrissey made a video tape of the interview in which the witness recanted a part of his grand jury testimony. Morrissey then arranged for the press to view the taped interview during a press conference. For this he was tried in the district court and found guilty of violating Local Rule 57(c) which provides that from the time of arrest, a lawyer associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement which a reasonable person would expect to be further disseminated by public communication. For this he was sentenced to 90 days' imprisonment

followed by three years of probation. See *In re Morrissey*, 996 F. Supp. 530 (E.D. Va. 1998), *aff'd*, 168 F.3d 134 (4th Cir. 1999), and *cert. denied*, 527 U.S. 1036 (1999).

Morrissey remained at liberty on probation, which included a provision that he not violate any federal, state or local law or be held in contempt of any court while on release. Despite this, Morrissey was held in contempt in the Circuit Court of the City of Williamsburg for directing an inappropriate comment to opposing counsel on August 7, 1998. Upon apology to the court, it expunged his contempt citation, but the district court amended Morrissey's release to require anger management therapy. During this time, Morrissey got into a dispute with a home repair contractor who was working at the home of one of Morrissey's associates, which resulted in a fist fight, badly injuring the contractor. His federal bond was revoked on account of that fight and he was in jail until October 1, 1999. On December 28, 1999, a three-judge Virginia court suspended his license to practice law in Virginia for three years, which was affirmed by the Virginia Supreme Court in *Morrissey v. Virginia State Bar*, 538 S.E.2d 677 (Va. 2000). Morrissey's bond for the Rule 57(c) violation had been revoked July 6, 1999, and upon his release from custody, he reported to his federal probation officer, David Guertler, to discuss the special condition of probation, that he perform 300 hours of community service. Guertler informed Morrissey that at least 50 of those hours were to be performed for Habitat for Humanity. Following that interview with Guertler, Morrissey contacted Ted Grivetti, the local coordinator for Habitat for Humanity's projects. He attempted to get Grivetti to sign his community service time sheet, reflecting Morrissey's service to a neighbor as satisfying the Habitat for Humanity requirement, but Grivetti refused and advised Morrissey to speak to his probation officer. Morrissey denied having a probation officer. Morrissey then offered to provide free legal services for Habitat for Humanity if Grivetti would sign off on his community service time sheet. Grivetti again refused, stating he would only sign off on hours spent on an actual Habitat project. These conversations came to Guertler's attention, who confronted Morrissey with them, and in that meeting, Morrissey denied ever asking Grivetti to sign his time sheet reflecting hours purportedly worked for his neighbor, and denied offering to perform legal services as his community service. Upon that conversation, Guertler filed a petition in the district court to revoke Morrissey's

probation. After an evidentiary hearing, the district court found that Morrissey had violated 18 U.S.C. § 1001 by lying to Guertler about his conversations with Grivetti. The district court also found that Morrissey had, in fact, offered legal services in exchange for a falsification of his community service report sheets. The district court revoked Morrissey's probation and sentenced him to an additional 90 days in jail. This order of the district court was affirmed on appeal in *In re Morrissey*, No. 00-4656, 238 F.3d 413 (table) (4th Cir. 2000). The three-judge district FRDE court in the case at hand found that Morrissey's actions in the Harris affair and his long record of professional difficulty merited disbarment and entered its order disbarring Morrissey. It found that Morrissey had a "long track record of severe ethical problems" in the state courts, extensively compounded by his misconduct before the district court. The gist of its opinion is quoted here:

> Morrissey's lack of candor, if not outright dishonesty, in dealings with this Court and those responsible for supervising the performance of his sentence is wholly unacceptable from an officer of the court. This Court and the public are entitled to rely on the honesty, integrity, and civility of counsel. Morrissey, however, has conclusively shown himself unworthy of this trust. Regardless of his past contributions to the community and the Bar, Morrissey's proclivity for unprofessional and unethical conduct, his lack of candor before Judge Payne, the probation officer, and this panel, and his failure to acknowledge his misconduct renders him unfit to practice before the judges of this district.

On appeal, Morrissey makes no objection to the general procedure involved in this proceeding. He does, however, make two arguments, the first of which would result in a vacation of the order of the district court appealed from, and the last of which would result in a new trial. The first objection is that the three judge FRDE panel had no jurisdiction over Morrissey to inquire into conduct which occurred while Morrissey was suspended from the practice of law before the district court in the Eastern District of Virginia. The second objection is that Morrissey was prevented "from adducing evidence that he did not solicit Theodore J. Grivetti to falsify documents relating to commu-

nity service hours or that he did not lie to his probation officer." Br. at 2. We will address those questions in order.

Morrissey argues that because his license to practice law had been suspended during the time for which some or all of the conduct with which he was charged had occurred, especially that conduct relating to the Harris matter, the three-judge panel had no jurisdiction to inquire into it, on two grounds. First, suspension was adequate punishment, and second, because the conduct with which he was charged was that of an attorney, he could not be charged with violating rules of conduct for members of the bar, his license having been suspended.

So far as suspension being adequate punishment, we defer to the district court and hold that it did not abuse its discretion in disbarring Morrissey. See *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 530 (1824); *In re Evans*, 801 F.2d 703, 706 (4th Cir. 1986).

The question of whether Morrissey may be disbarred for conduct, all or part of which occurred while his license to practice law had been suspended, is similarly without merit.

Local Rule 83.1 (L) of the district court provides in part that "*[a]ll* counsel admitted to practice before this Court . . . shall be admitted subject to the rules, conditions and provisions set forth as Appendix B to these rules." (italics added) Section (H) of that same Rule provides that "*[a]ny* person who, before admission to the bar of this Court or during any disbarment or suspension, exercises any of the privileges of a member of the bar of this Court, or who pretends to be entitled so to do, shall be guilty of contempt of Court and subject to appropriate punishment therefor." (italics added) Thus, a literal reading of the rules of the Eastern District of Virginia, *all* counsel and *any* person, provides for the prosecution of a disbarment proceeding for acts which occurred during the time an attorney's license to practice law is under suspension.

While none of the federal courts of appeals seem to have considered this matter, and the opinion of no district court on the subject has come to our attention, we note that all of the States which have considered the question have come to the same conclusion, which is that an attorney may be disbarred for conduct which occurred during the

time his license to practice law was suspended. See *In re de Baca*, 11 P.3d 426, 429-30 (Colo. 2000); *In re Chavez*, 1 P.3d 417 (N.M. 2000); *Florida Bar v. Ross*, 732 So. 2d 1037 (Fla. 1998); *In re Wilkinson*, 834 P.2d 1356 (Kan. 1992); *Kirven v. Secretary of the Board of Comm'rs on Grievances & Discipline*, 246 S.E.2d 857 (S.C. 1978); *State ex rel Nebraska State Bar Ass'n v. Butterfield*, 111 N.W.2d 543 (Neb. 1961); *In re Oliver*, 89 P.2d 229 (Utah 1939); *Grievance Adm'r v. Hibler*, 577 N.W.2d 449 (Mich. 1998) (holds that even a disbarred attorney is subject to formal complaint).

The distinction between disbarment and suspension made in the *Butterfield* case is apt, and we adopt it: "Disbarment is the severance of the status and privileges of an attorney, whereas suspension is the temporary forced withdrawal from the exercise of office, powers, prerogatives, and privileges of a member of the bar." 111 N.W.2d at 546.

We hold that the three-judge district court had jurisdiction to consider the motion of the United States for the disbarment of Morrissey in this proceeding and, in so doing, to consider not only Morrissey's conduct since becoming a member of the bar, but also that part of such conduct which may have occurred during the time his license to practice law was suspended.

The next question concerns the admissibility of evidence and the role of the district court and, as well, the role of this court in such a proceeding. As noted, the events which brought this matter to a head were occasioned at the outset by the conduct of Morrissey during his representation of Harris which resulted in his two convictions for contempt, one for the violation of Rule 57(C) (the video tape and press conference) and the conviction for contempt following the difficulty with his probation officer.

"The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts and, consequently, to the due administration of justice." *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1874).

In reviewing the action of the district court in a disciplinary proceeding, we are told by the Court that it was "not inclined to inter-

pose, unless it were in a case where the conduct of the Circuit or District Court was irregular or was flagrantly improper." *Burr* 22 U.S. at 530. And we have construed that language in a disbarment case as a standard of abuse of discretion. *Evans*, 801 F.2d at 706, 708.

In the proceeding before the three-judge FRDE court, Morrissey moved *in limine* "to call some of the witnesses who testified in [the contempt hearing before Judge Payne] . . . [and] as well . . . to present additional witnesses and evidence, such as polygraph results, to impeach some of the evidence presented during that hearing." JA 305. The district court declined to permit Morrissey to present evidence addressing the facts underlying the prior judicial decisions, stating that what it would consider was mitigation evidence. Morrissey argues that the holding of the district court was a kind of issue preclusion occasioned by the differences in the degree of persuasion required for a revocation of probation and a disbarment. He argues that whatever the burden is in the two proceedings, it is heavier in the disbarment proceeding. While that argument may be attractive in different circumstances, that a fact susceptible to proof by a lesser burden is unable to preclude reexamination in a proceeding with a greater burden, in this disbarment proceeding, whatever those burdens may be, such is not the case. There are several reasons for our decision. The first is the great deference a reviewing court is directed to show to the court which imposes the disbarment. That is plainly set out in *Burr* and *Evans*. As we have noted, we should interpose only when the conduct of the district court was irregular or flagrantly improper, in this circuit an abuse of discretion.

Second, when Morrissey was convicted in August of 2000 for contempt, he promptly appealed to this court, which decided the case on December 22 of that year, affirming the judgment of conviction. In an abundance of caution, we have examined the briefs of Morrissey in that appeal and find no question as to the admissibility of evidence raised, especially no question about any refusal of the district court to receive evidence offered by Morrissey in that proceeding. Although the opportunity was there, the evidence now complained of was not offered and the question was even raised on appeal as to whether Ted Grivetti was credible and Morrissey was not credible. The district court accepted the testimony of Ted Grivetti and declined to accept the testimony of Morrissey. On appeal the finding was that "[w]e find

that the district court's factual findings are not clearly erroneous." *In re Morrissey*, No. 00-4656, slip op. at 2 (4th Cir. 2000).

A third reason is the decision of the district court as shown in the transcript of the hearing on August 15, 2000. It obviously recognized that the standard of proof might not be altogether certain and stated that it believed the standard to be that "[t]he Court is obligated to conclude that it is reasonably satisfied that the conditions have not been met." It continued that it was arguable that "[t]he higher standard of preponderance of the evidence is the appropriate standard" and stated that either of those standards had been met. The court continued that a third standard was proof beyond a reasonable doubt, and that it "did find, were that the standard, that the matter had been proven even by that standard notwithstanding the conflicting testimony." While the district court would seem to be on safe ground in its statement that being reasonably satisfied is the standard of proof in a probation revocation proceeding, see *United States v. Cates*, 402 F.2d 473, 474 (4th Cir. 1968), we need not and do not decide that the evidence in that proceeding was preclusive. We do decide, however, that because the probation revocation proceeding in the district court in the Harris matter was fairly conducted, that no objection was made on appeal to the fact finding of the district court other than to the weight attributed to the evidence of certain witnesses, and that the district court in that proceeding was ever so careful in recognizing that burden of proof in such proceedings as that might well be in question, the three-judge FRDE court did not abuse its discretion in declining to reopen the Harris contempt proceedings.

In sum, we hold that the three-judge FRDE court had jurisdiction to consider all of the acts of Morrissey complained of, either during the time his license as an attorney was suspended or during the time it was not suspended. We are further of opinion and hold that the FRDE court did not abuse its discretion when it declined to open up the Harris contempt proceeding and did not abuse its discretion in ordering disbarment.

The order of the district court appealed from is accordingly

*AFFIRMED.*

## APPENDIX A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA


IN RE:                                 )
                                       )
                                       )
                                       ) Miscellaneous No: 3:97ms16
JOSEPH D. MORRISSEY,                   )
ESQUIRE                                )
                                       )
                                       )

O R D E R

For the reasons stated in the accompanying Memorandum Opinion, the Government's Motion to Suspend or Disbar Joseph D. Morrissey from practicing before the United States District Court for the Eastern District of Virginia is GRANTED, and it is hereby

ORDERED that Joseph D. Morrissey be and is disbarred from practicing before the United States District Court for the Eastern District of Virginia.

The Clerk is directed to strike Joseph D. Morrissey from the roll of attorneys of this court and to forward copies of this Order and accompanying Memorandum Opinion to counsel of record, the Virginia State Bar, and the Clerk for the United States Court of Appeals for the Fourth Circuit.

Entered this _____ day of December, 2001.


_____
James C. Cacheris - Panel Chairperson
Senior United States District Judge


_____
Leonie M. Brinkema
United States District Judge

                                    Jerome B. Friedman
                                    United States District Judge

Richmond, Virginia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

IN RE:

JOSEPH D. MORRISSEY,
ESQUIRE                          Miscellaneous No: 3:97ms16

### *MEMORANDUM OPINION*

Before the Court is the United States' Motion to Suspend or Disbar Joseph D. Morrissey from practicing before the United States District Court for the Eastern District of Virginia.[1] In response to that motion, a Federal Rules of Disciplinary Enforcement Counsel was appointed pursuant to Federal Rule of Disciplinary Enforcement ("F.R.D.E.") V(A). The F.R.D.E. counsel filed a report recommending disbarment. On January 25, 2001, in accordance with F.R.D.E. V(C), Morrissey was ordered to show cause why he should not be disbarred. The undersigned judges were appointed to consider this matter pursuant to F.R.D.E. V(D) and an evidentiary hearing was held on April 3, 2001. At the hearing, Morrissey, who was represented by counsel, presented numerous local citizens as character witnesses and members of the Bar to describe his legal skills. He also filed various post-hearing documents, some without leave of court, however, all of which have nevertheless been considered.

For the reasons set forth herein, the United States' Motion will be GRANTED.

### I. *Morrissey's History of Misconduct*

Frequent episodes of unethical, contumacious, or otherwise inappropriate conduct mar Joseph D. Morrissey's career as prosecutor and

---

[1]Pursuant to Local Rule 83.1 (L), all attorneys practicing in this district are admitted "subject to the rules, conditions and provisions" of the Federal Rules of Disciplinary Enforcement (F.R.D.E.) as enacted in Appendix B to the Local Rules. Disbarment for misconduct may be imposed "for good cause shown, and after notice and opportunity to be heard." F.R.D.E. IV.

private defense attorney. Evidence gathered by F.R.D.E. Counsel and made a part of the record during the hearing before this panel demonstrates Morrissey's fifteen year history of contempt citations, reprimands, fines, suspensions, and even incarcerations arising from unprofessional conduct mostly involving an uncontrollable temper, inappropriate responses to stress and dishonesty.

This history of misconduct is well documented. On March 24, 1986, the Richmond Circuit Court held Morrissey in contempt and fined him $50 for berating the judge and continuing to argue after the court's ruling.[2] *See Commonwealth v. Miles*, No. 86-F-129(Va. Cir. Ct. March 24, 1986); *Morrissey v. Virginia State Bar*, 538 S.E.2d 677, 680 (Va. 2000). In December 1987, the Henrico County Circuit Court twice cited Morrissey for contempt in the same trial, fining him $50 for the first violation and $100 for the second. *See Commonwealth v. Walker*, No. 87-F-1143 (Va. Cir. Ct. Dec. 18, 1987); *Morrissey v. Virginia State Bar*, 9538 S.E.2d at 680. Morrissey was again cited for contempt and fined $50 in the Henrico County Circuit Court on May 3, 1988. *See Commonwealth v. Gudd*, No. 88-F-8 (Va. Cir. Ct. May 3, 1988); *Morrissey v. Virginia State Bar*, 538 S.E.2d at 680.

Disciplinary proceedings were instituted against Morrissey on April 12, 1990, however, the Virginia State Bar Disciplinary Committee offered to dismiss a disciplinary complaint on the condition that Morrissey attend the Virginia State Bar professionalism course upon his return to private practice. *See* Notice of Dismissal upon Terms, F.R.D.E. Counsel Report, Ex. 6. On December 28, 1990, the Virginia State Bar District Disciplinary Committee reprimanded Morrissey for failing to timely file a petition for appeal, failing to file a habeas corpus petition, and failing to inform his client of these omissions. The Disciplinary Board later affirmed this reprimand. *See Morrissey v. Virginia State Bar*, 538 S.E.2d at 680.

Morrissey's next episode of misconduct involved a confrontation with Judge John P. Driscoll, a substitute judge in the General District Court for the City of Richmond. *See Morrissey v. Commonwealth*, 428 S.E.2d 503 (Va. 1993). On June 17, 1991, while Morrissey was

---

[2]The court subsequently vacated this conviction after Morrissey submitted a written apology.

serving as Commonwealth's Attorney for the City of Richmond, Judge Driscoll refused to accept a plea agreement offered by an Assistant Commonwealth's Attorney, commenting from the bench on the poor preparation and performance of the Commonwealth's Attorney's Office. *Id.* Morrissey arrived from an adjacent courtroom, entered an appearance, and proceeded to challenge the substitute judge's rejection of the plea agreement. *Id.* at 503-04. An argument ensued, and on June 19 Morrissey wrote a letter to Judge Driscoll complaining about his conduct on the bench. *Id.* at 504-05. The letter closed as follows:

> Finally, five police officers and one attorney observed the colloquy between you and me in the Courtroom. Although I was unfailingly courteous to you, it was evident to everybody that you were trying to bait me—perhaps so you could hold me in contempt. Please be assured Mr. Driscoll that if that behavior ever, ever, happens again, I will not be so kind as to merely draft you a letter of indignation. *Id.*

On July 18, 1991, Morrissey was found guilty of contempt for issuing this letter and sentenced to five days in jail. *Id.* at 505. Both the Circuit Court and the Virginia Court of Appeals subsequently upheld this contempt conviction. *Id.*

On December 19, 1991, Morrissey was held in contempt for engaging in a fist fight with opposing counsel during a criminal trial in Richmond Circuit Court. A three-judge panel subsequently reprimanded Morrissey for this conduct. *See Morrissey v. Virginia State Bar*, 538 S.E.2d at 680.

On August 31, 1993, the Virginia State Bar District Subcommittee offered to dismiss a disciplinary complaint arising from Morrissey's unilateral decision as Commonwealth Attorney to amend a felony arrest warrant down to a misdemeanor without leave of court. The Subcommittee conditioned dismissal on a formal apology to the trial judge. *See* Subcommittee Determination (Dismissal with Terms), F.R.D.E. Counsel Report, Ex. 12. *See also Morrissey v. Virginia State Bar*, 538 S.E.2d at 680-81.

Following a two day hearing on December 7-8, 1993, a three-judge court suspended Morrissey's license to practice law for six

months based on Morrissey's handling of a plea bargain in a rape case. *See In re Morrissey*, Chancery No. MC-4160 (Va. Cir. Ct. January 19, 1994). As Commonwealth's Attorney, Morrissey arranged for a defendant in a felony rape case to plead guilty to a misdemeanor and for the defendant's father to pay $25,000 to the victim and $25,000 to charities designated by Morrissey. *See Morrissey v. Virginia State Bar*, 448 S.E.2d 615,617 (Va. 1994). Morrissey instructed the defendant not to reveal the charity payments to the court and did not inform the victim of the charity payments. *Id.* at 618. Morrissey also rebuffed the victim's request for $100,000, explaining that the arrangement was not negotiable. *Id.* at 617. The Virginia Supreme Court affirmed the six-month suspension. *Id.* at 621. On October 20, 1997, Morrissey was again cited for contempt and sentenced to 30 days in jail for an angry outburst directed at the presiding judge during a sentencing hearing held in the Chesterfield County Circuit Court. *See Morrissey v. Virginia State Bar*, 538 S.E.2d at 679.

The incidents which bring Morrissey before this Court occurred after Morrissey's entry into private practice. Morrissey was retained to represent Joel Harris, a longtime Richmond political figure who had been indicted by a federal grand jury for drug distribution. *See In re Joseph D. Morrissey*, 996 F. Supp. 530 (E.D. Va. 1998), *aff'd.* 168 F.3d 134 (4th Cir. 1999), *cert. denied* 527 U.S. 1036 (1999). During his representation of the defendant, Morrissey videotaped an interview of a key prosecution witness in which the witness recanted much of his grand jury testimony. *Id.* at 532. He then arranged for the media to view the taped interview during a press conference and made further public comments about the case. *Id.* at 533-34. Morrissey was later convicted of two counts of contempt for violating Local Rule 57(C),[3] and on February 24, 1998, he was sentenced to ninety days' imprisonment, followed by three years of probation.

---

[3]Local Rule 57(c), captioned "Pending Criminal Proceedings—Specific Topics," provides:

> From the time of arrest, issuance of an arrest warrant, or the filing of a complaint, information, or indictment in any criminal matter until the termination of trial or disposition without trial, a lawyer or a law firm associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement which a reasonable person would expect to be further disseminated by any means of public communication . . .

As conditions of probation, Morrissey was suspended from practicing in the U.S. District Court for the Eastern District of Virginia for three years and was instructed to commit no federal, state, or local crimes or "be held in contempt of any court at any time during probation." Sentencing Hearing Tr., Feb. 24, 1998, F.R.D.E. Counsel Report, Ex. 21, at 40. Judge Payne stayed execution of the sentence and released Morrissey on his own recognizance pending appeal. The release order included requirements that Morrissey not violate any federal, state, or local laws and that he not be held in contempt of any court while on release. Despite these explicit requirements, on August 7, 1998, while free on Judge Payne's bond order, Morrissey was held in contempt in the Circuit Court for the City of Williamsburg for directing an inappropriate comment to opposing counsel within earshot of the judge. *See* Sentencing Hearing Tr., August 7, 1998, F.R.D.E. Counsel Report, Ex. 22, at 2-4. Morrissey apologized after being held in custody for one hour. Based on this apology, the Court expunged the contempt citation. *See* Letter of Judge Powell, September 21, 1998, F.R.D.E. Counsel Report, Ex. 23. However, because Judge Payne deemed that conduct to violate his bond order, he amended Morrissey's bond to require anger management therapy. *See In re Morrissey*, Misc. No. 3:97ms16 (E.D. Va. Oct. 2, 1998).

Although Morrissey subsequently participated in an anger management program, he got into a dispute with home-repair contractor Garien Wycoff while Wycoff was working at the home of one of Morrissey's associates on July 3, 1999. The altercation escalated into a fistfight, and Wycoff was badly injured. *See* Hearing Transcript, July 6, 1999, F.R.D.E. Counsel Report, Ex. 26. On July 6, 1999, Judge Payne revoked Morrissey's bond because of that fight, and Morrissey remained in jail until October 1, 1999. *See In re Morrissey*, Misc. No. 3:97ms16 (E.D. VA. July 6, 1999). On October 7, 1999, Morrissey was convicted by a jury of assault and battery in the Richmond Circuit Court for his role in the fight with Wycoff. *See Commonwealth v. Morrissey*, No. 99-F-2548 (Va. Cir. Ct. Oct. 7, 1999).

On December 28, 1999, a panel of three Virginia circuit court judges suspended Morrissey's license to practice law in Virginia for three years following a two-day hearing which addressed many of the incidents set forth above. The Virginia Supreme Court affirmed this

suspension, which took effect on December 15, 2000. *See Morrissey v. Virginia State Bar*, 538 S.E.2d at 682.

The proverbial "last straw" involved Morrissey's efforts to circumvent the conditions of probation imposed by Judge Payne in the *Harris* case. Morrissey was released from federal custody on October 1, 1999 and met with his federal Probation Officer, David Guertler, on October 7, 1999, to discuss the special condition of probation that he perform 300 hours of community service. Guertler informed Morrissey that at least 50 of the hours were to be performed through Habitat for Humanity ("Habitat"). In a December 10, 1999 meeting, Guertler instructed Morrissey to begin his work with Habitat and reminded Morrissey that he could not provide legal services as a way to fulfill this service requirement.

Soon thereafter, Morrissey contacted Ted Grivetti, the local coordinator for Habitat projects. Morrissey explained his community service requirement, claimed to have completed work for an elderly neighbor, and asked Grivetti to sign his community service time sheet reflecting Morrissey's services to his neighbor as satisfying the Habitat requirement. When Grivetti refused and advised Morrissey to speak to his probation officer, Morrissey denied having a probation officer. Morrissey then offered to provide free legal services to Habitat if Grivetti would sign off on his community service time sheet. Grivetti again declined, stating that he would only sign off on hours spent on an actual Habitat project. Grivetti later related this conversation to Andrea Edmonds, then a probation officer, who in turn advised Guertler of Morrissey's offers to Grivetti. After further investigation, Guertler and his supervisor confronted Morrissey in a meeting on February 16, 2000. In that meeting, Morrissey denied ever asking Grivetti to sign his time sheet reflecting hours purportedly worked for his neighbor and also denied offering to perform legal services as his community service.

Probation Officer Guertler filed a revocation petition and on April 20, 2000, Judge Payne issued a Show Cause Order directing Morrissey to show cause why his probation should not be revoked because of his overtures to Grivetti. Following an evidentiary hearing, Judge Payne concluded that Morrissey had violated 18 U.S.C. § 1001[4]

---

[4]18 U.S.C. § 1001(a) provides, in relevant part, that

[W]hoever, in any matter within the jurisdiction of the executive,

by lying to his probation officer when denying his discussions with Grivetti. He also found that Morrissey had, in fact, offered legal services in exchange for the falsification of service report sheets. *See* Hearing Transcript, October 28, 2000, F.R.D.E. Counsel Report, Ex. 29.[5] Judge Payne revoked Morrissey's probation and sentenced him to an additional 90 days incarceration. *See In re Morrissey*, Misc. No. 3:97ms16 (E.D. Va. Sept. 5, 2000). The Fourth Circuit subsequently affirmed both the revocation of probation and the sentence imposed. *See In re Morrissey*, 238 F.3d 413, 2000 WL 1868978 (4th Cir. Dec. 22, 2000)(unpublished).

II.   *The Due Process Hearing*

Morrissey's record, as summarized above, demonstrates a consistent problem with management of his temper, an inability to comply with court orders, and a chronic disregard for truthfulness. Unfortunately, the manner in which Morrissey approached the evi-

---

legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title or imprisoned not more than 5 years, or both.

[5]During a lengthy evidentiary hearing, Judge Payne received testimony from several witnesses corroborating the chain of events described herein. At the close of the evidence, Judge Payne expressly declined to credit the testimony of Morrissey and one of his witnesses. *See* Hearing Transcript, October 28, 2000, F.R.D.E. Counsel Report, Ex. 29, at 291-94. Judge Payne concluded that the "conditions of probation have not been met," noting that the evidence supported his finding under either a preponderance of the evidence or clear and convincing standard. *Id.* at 294.

dentiary hearing, rather than dispelling the panel's concerns with these problems, only reinforced its skepticism about Morrissey's fitness to practice law before this court.

Instead of presenting evidence of a diligent effort to address his anger control problem, which has plagued his legal career, Morrissey presented a series of character witnesses from the Richmond area and the legal community to develop two general themes: that he has been a good neighbor who has volunteered many hours to the elderly and needy and that he is a very capable criminal defense attorney. Neither of these two facts were at issue in the hearing, which necessarily focused on Morrissey's fitness to practice law before this Court.

Morrissey utterly failed to produce any evidence at the hearing about his efforts to manage his temper, even though that problem has consistently landed him in trouble with the bench. It was not until questioned by the panel that Morrissey reported he had been meeting with a Reverend Bradley Harris for "counseling". It struck the panel that not even Morissey's counsel knew about these sessions because no curriculum vitae for Reverend Harris was presented, nor was Reverend Harris on Morrissey's list of witnesses. The panel allowed Morrissey to supplement the record with Reverend Harris' curriculum vitae. On April 3, 2001, Morrissey filed Reverend Harris' curriculum vitae, which did not show any formal training in psychology, psychiatry, social work or anger management. A letter from Reverend Harris was also included. In that letter Harris explained how he sought out Morrissey in early 2000 to provide him with "spiritual assistance." He described providing Morrissey with Bible study. Their second meeting was five months later at a restaurant, at which "theology, sotemiology, forgiveness, the sovereignty of God and related matters pertaining to his current circumstances were discussed." The rest of Reverend Harris' letter describes other lunch or dinner meetings and a series of weekly meetings in the February to March, 2001 time period in which they discussed "five keys to effective spiritual growth." Nothing in Reverend Harris' letter describes professional anger management counseling, thereby reinforcing our conclusion that Morrissey has not yet acknowledged that his temper interferes with his professionalism. We find that this informal approach to such an obviously serious problem is wholly insufficient and is clear evi-

dence that Morrissey does not view his inability to control his anger as a serious flaw.

Morrissey's testimony about this "counseling" also underscores the Panel's concern about Morrissey's lack of candor with the court. It is clear to us that the Harris counseling cannot be considered appropriate anger management, as Morrissey claimed at the hearing. Moreover, when asked about his future plans, Morrissey at first testified that he would be leaving Virginia during the summer for Ireland where he had a teaching job. Upon further probing, it became clear that Morrissey did not yet have a teaching job, rather a church official was working on getting him one. We find this testimony to be the second incident of less than full candor before this panel.

III.  *Discussion*

Federal courts have the inherent power to control the admission of attorneys to their bars and to discipline attorneys who appear before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) *citing Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531 (1824). Even without a finding of contempt, a court may impose such sanctions as a monetary penalty or disbarment as part of this inherent power. *See Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 512 (1873)(disbarment). The record before us clearly establishes a long track record of serious ethical problems surrounding Morrissey's misconduct in state court. That conduct was extensively compounded by his misconduct before Judge Payne.

Attorneys practicing before the courts of this district are subject to Virginia's standards for ethical conduct.[6] At all relevant times,

---

[6]Local Rule 83.1, captioned "Attorneys and Pro Se Parties," currently provides in relevant part:

(I) Professional Ethics. With the exception of Virginia Rule of Professional Conduct 3.6 (the subject of which is covered by Local Criminal Rule 57), the ethical standards relating to the practice of law in this Court shall be the Virginia Rules of Professional Conduct, as published in the version effective January 1, 2000.

these standards have prohibited criminal or deliberately wrongful conduct which reflects adversely on fitness to serve as an attorney or involving dishonesty, fraud, deceit or misrepresentation.[7]

We find that Morrissey's misconduct in the *Harris* case while on bond when he was involved in an assault, and later, while on probation when he lied to his probation officer clearly violated these standards. In particular, Morrissey's misconduct while on bond showed that he was either unwilling or unable to control his temper. His conduct while on probation showed his unwillingness or inability to follow court orders and to be truthful with the court and court personnel. The record also establishes that Morrissey made false statements to his probation officer and before Judge Payne, who made a finding on the record that he did not credit Morrissey's testimony. Lastly, as discussed above, the panel is extremely troubled by Morrissey's failure to appreciate the purpose of these very proceedings. Other than his testimony, the evidence presented at the hearing before this panel was irrelevant to the issues before us. When Morrissey did testify, it became obvious that he did not take his anger management problem seriously, that he still did not accept Judge Payne's conclusions about his conduct with the probation office and he continued to be less than candid with the court.

Morrissey contends that, despite professional missteps, his record is one of devotion to his clients and his community. The panel was impressed with the many witnesses who testified to Morrissey's

* * *

(L) Federal Rules of Disciplinary Enforcement. All counsel admitted to practice before this Court or admitted for the purpose of a particular proceeding (pro hac vice) shall be admitted subject to the rules, conditions and provisions set forth in full as Appendix B to these Rules.

[7]The Virginia Rules of Professional Conduct took effect on January 1, 2000, replacing the Virginia Code of Professional Responsibility. F.R.D.E. counsel has referred the Court to the relevant provisions of the Code and the corresponding Rules now in force. *Compare* Virginia Code of Professional Responsibility, DR 1-102(A)(3) , (4) *with* Virginia Rules of Professional Conduct, R. 8.4 (b) , (c).

overall character, his career in public service, and his zeal in representing his clients' interests. Although such conduct is commendable, we share the Virginia Supreme Court's view that Morrissey's chronic "lack of civility and deplorable conduct" eclipse his virtues as a caring neighbor and zealous advocate.[8]

Morrissey's lack of candor, if not outright dishonesty, in dealings with this Court and those responsible for supervising the performance of his sentence is wholly unacceptable from an officer of the court. This Court and the public are entitled to rely on the honesty, integrity, and civility of counsel. Morrissey, however, has conclusively shown himself unworthy of this trust. Regardless of his past contributions to the community and the Bar, Morrissey's proclivity for unprofessional and unethical conduct, his lack of candor before Judge Payne, the probation officer, and this panel, and his failure to acknowledge his misconduct renders him unfit to practice before the judges of this district.

## CONCLUSION

For these reasons, Joseph D. Morrissey shall by an appropriate order be disbarred from practice before the Eastern District of Virginia.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record, the Virginia State Bar, and the Clerk for the United States Court of Appeals for the Fourth Circuit.

Entered this _____ day of December, 2001.

---

[8]*Morrissey v. Virginia State Bar*, 538 S.E.2d at 682. "Contrary to Morrissey's assertions, he did not merely 'aggressively' assert the rights of his clients. Rather, the record demonstrates that he has repeatedly acted in flagrant disregard of the ethics and standards necessary to maintain public confidence in the legal profession." *Id.* at 681.

This Virginia Supreme Court opinion did not even consider Morrissey's misconduct while on probation in the *Harris* matter.

James C. Cacheris - Panel Chairperson
Senior United States District Judge

Leonie M. Brinkema
United States District Judge

Jerome B. Friedman
United States District Judge

Richmond, Virginia