## Elton Eugene Gunter

### v.

## Virginia State Bar

Record No. 890473

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

---

* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation, November 1, 1989.

618

*Holmes C. Harrison (Harrison, Thumma & Stark*, on brief), for appellant.

*Peter R. Messitt, Assistant Attorney General (Mary Sue Terry, Attorney General; Gail Starling Marshall, Deputy Attorney General; William H. Hauser, Senior Assistant Attorney General*, on brief), for appellee.

Justice Russell delivered the opinion of the Court.

The Seventh District Committee of the Virginia State Bar considered three charges against E. Eugene Gunter, an attorney, al-

leging violations of Disciplinary Rules 1-102, 7-102, and 7-104. After hearing the evidence, the committee dismissed the latter two charges, but certified to the Executive Director of the Bar, for trial before the Bar's Disciplinary Board, the charge that Mr. Gunter had violated DR 1-102(A)(4), which provides that a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation which reflects adversely on a lawyer's fitness to practice law." At Mr. Gunter's request, the case was tried before a three-judge court pursuant to Code § 54.1-3935(B). After a hearing on January 25, 1989, the court found that the Bar had carried its burden of proving a violation of DR 1-102(A)(4), and ordered that Mr. Gunter's license to practice law be suspended for a period of 30 days.**

The case comes to us on Mr. Gunter's appeal of right. The sole question is whether the evidence supports the court's finding. The facts will be stated in the light most favorable to the Bar, which prevailed at trial.

In May 1984, Jack Zerkel and his wife were living together in Shenandoah County but were having domestic difficulties. Mr. Zerkel, suspecting his wife to be guilty of adultery, retained Mr. Gunter as counsel. He asked Mr. Gunter to hire a private investigator to seek evidence of Mrs. Zerkel's suspected adultery. Mr. Gunter employed Dennis Sirbaugh, an investigator, for that purpose. Despite continuing surveillance, no evidence of adultery was found.

At a meeting with his client in June 1984, Mr. Gunter expressed the view that it would not be improper to install a recording device on the telephone in the Zerkel home in order to maintain surveillance of Mrs. Zerkel's activities. His view was based upon the facts that the parties were still living together, the telephone was in Mr. Zerkel's name, and Mr. Zerkel paid the telephone bills. Mr. Zerkel authorized the installation and Mr. Sirbaugh, at Mr. Gunter's direction, without Mrs. Zerkel's knowledge, installed a recording device connected to telephone wires in the basement of the Zerkel home. The recording device was activated whenever a receiver was picked up in the home, and it recorded all telephone traffic. Periodically, Mr. Sirbaugh reviewed the tapes and reported the substance of Mrs. Zerkel's conversa-

---

** Judge Jennings dissented from the penalty imposed, expressing the view that a public reprimand would be an appropriate sanction.

tions to Mr. Gunter. There was no simultaneous monitoring of the conversations.

The tape recorder remained in place for about a month, from mid-June to mid-July, 1984. None of the recordings produced any indication of adultery. Mr. Gunter did learn from the recordings, however, that Mrs. Zerkel was conferring with attorneys to obtain legal advice in contemplation of divorce litigation, a fact she was attempting to conceal from her husband. In conversations with friends, recorded without her knowledge, she discussed the legal advice she had received, but no conversations with her attorneys were recorded. There is no evidence that Mr. Gunter knew that any attorney had agreed to represent Mrs. Zerkel.

After hearing Mrs. Zerkel's recorded comments regarding legal advice she had received concerning desertion, support, child custody and property division, Mr. Gunter advised his client to continue "standing pat." Later, Mr. Gunter learned from the recordings that Mrs. Zerkel had received joint tax refund checks which she intended to cash by using the parties' joint bank account. As a result of this information, Mr. Gunter advised his client to close the account immediately. Mr. Zerkel did so, making it impossible for Mrs. Zerkel to cash the refund checks without his endorsement.

The recorder was removed from the Zerkel home after Mr. Gunter mentioned it in a memorandum inadvertently sent to Mr. Zerkel at his place of business, where it might have been seen by employees friendly with Mrs. Zerkel. In a memorandum to his file dated July 24, 1984, Mr. Gunter expressed the thought that if Mrs. Zerkel did not discover the surveillance within 10 days, however, he would recommend that the tape recorder be reinstalled "in order to secure possible evidence of adultery and, more importantly, in order to secure an input directly from [Mrs. Zerkel] as to settlement negotiations."

The tape recorder was never reinstalled. Mrs. Zerkel ultimately learned about it through Mr. Gunter's memorandum which she discovered in her husband's automobile. She complained to the State Police, which resulted in Mr. Gunter's indictment by the Shenandoah County Grand Jury on January 10, 1985, for conspiracy to violate the wiretapping statute, Code § 19.2-62. Mr. Gunter was tried by a jury on that charge and was acquitted on February 3, 1986. The following year, the Bar instituted these proceedings before the Seventh District Committee.

The appeal is based upon the arguments that there was no proven violation of the wiretapping laws, as we construed them in *Cogdill* v. *Commonwealth*, 219 Va. 272, 247 S.E.2d 392 (1978), because there was no "interception" of telephone communications; that the charges of violations of law had been dismissed by the district committee in any event; and that in the absence of a violation of law, Mr. Gunter's conduct did not amount to "dishonesty" or "deceit" within the meaning of DR 1-102(A)(4). The Bar responds that the conduct complained of did indeed violate the wiretapping laws, notwithstanding Mr. Gunter's acquittal of the criminal conspiracy charge, but that even if it was not unlawful, it was unethical, and falls within the prohibition of DR 1-102(A)(4).

The Bar argues, on brief: "[s]tripped to its essentials, appellant's position is that if it's legal, it's ethical. Appellant's view of the Code of Professional Responsibility is far too restrictive. The Code requires that an attorney do more than simply refrain from criminal conduct." That observation conforms to views we have expressed.

In *National Airlines* v. *Shea*, 223 Va. 578, 292 S.E.2d 308 (1982), after holding that improper conduct on the part of an attorney came within the rules of estoppel, we said, "[t]hese are the rules of the marketplace. Higher standards should prevail in the practice of law." *Id.* at 583, 292 S.E.2d at 311. The lowest common denominator, binding lawyers and laymen alike, is the statute and common law. A higher standard is imposed on lawyers by the Code of Professional Responsibility, many parts of which proscribe conduct which would be lawful if done by laymen. We must apply that standard in weighing challenges to disciplinary proceedings against lawyers, but we emphasize that more is expected of lawyers than mere compliance with the minimum requirements of that standard. The traditions of professionalism at the bar embody a level of fairness, candor, and courtesy higher than the minimum requirements of the Code of Professional Responsibility.

It follows that conduct may be unethical, measured by the minimum requirements of the Code of Professional Responsibility, even if it is not unlawful. It is therefore immaterial whether the conduct complained of in the present case violates the wiretapping laws, and we expressly refrain from deciding that question.

The Bar relies upon Formal Opinion 337 of the American Bar Association's Committee on Ethics and Professional Responsi-

bility (1974), which condemned as a violation of DR 1-102(A)(4) the recordation by a lawyer of *any* conversation without the consent or prior knowledge of all parties to the conversation, subject only to exceptions in favor of law-enforcement officers. The Bar also cites cases from a number of sister jurisdictions which have considered the question and, with near unanimity, have come to the same conclusion. The ABA Opinion, as well as the cited decisions of other courts, however, embrace the recordation by a lawyer of conversations to which he is a party, a circumstance not present in the case before us. We are not called upon to decide whether that conduct violates DR 1-102(A)(4), and we expressly refrain from deciding that question as well.

■ There remains the question whether the recordation, by a lawyer or by his authorization, of conversations between third persons, to which he is not a party, without the consent or prior knowledge of each party to the conversation, is "conduct involving dishonesty, fraud, [or] deceit" under DR 1-102(A)(4). We have no hesitancy in giving an affirmative answer to that question. Among numerous definitions of "deceit" are: "the act or practice of deceiving (as by falsification, concealment, or cheating) . . . artifice, or practice designed to mislead another: wily device . . . any trick, collusion, contrivance . . . or underhand practice used to defraud another." Webster's Third New International Dictionary 584 (1976). "Deceitful" is defined as "serving to mislead or *ensnare*." Webster's New International Dictionary 679 (2nd Ed. 1934) (emphasis added). The surreptitious recordation of conversations authorized by Mr. Gunter in this case was an "underhand practice" designed to "ensnare" an opponent. It was more than a departure from the standards of fairness and candor which characterize the traditions of professionalism. We hold that it was deceitful conduct proscribed by DR 1-102(A)(4).

For the foregoing reasons, the judgment will be

*Affirmed.*