Present:   All the Justices

JOSEPH D. MORRISSEY

                              OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 001139              November 3, 2000

VIRGINIA STATE BAR, EX REL.
THIRD DISTRICT COMMITTEE

        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
             Alfred D. Swersky, Kenneth E. Trabue,
              and H. Thomas Padrick, Jr., Judges

                              I.

     In this appeal of right by an attorney from an order of

suspension, the central question is whether an excessive

sanction was imposed.

                              II.

                              A.

     A circuit court consisting of three judges appointed

pursuant to Code § 54.1-3935 found Joseph Dee Morrissey, a

member of the Virginia State Bar, guilty of one violation of

Disciplinary Rule 7-105(A) and two violations of Disciplinary

Rule 1-102(A)(3).  The court received evidence in aggravation

and mitigation, including Morrissey's prior record of

discipline.  The court suspended Morrissey's license to

practice law in this Commonwealth for a period of three years.

                              B.

     Former Disciplinary Rule 7-105(A), which was in effect at

the time of Morrissey's misconduct, stated in relevant part:

"A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling."

Former Disciplinary Rule 1-102(A), which was in effect at the time of Morrissey's misconduct, stated:

"A lawyer shall not:

. . . .

"(3) Commit a crime or other deliberately wrongful act that reflects adversely on the lawyer's fitness to practice law."[*]

Even though Morrissey does not challenge the sufficiency of the evidence to support the court's findings that he violated the aforementioned disciplinary rules, we will summarize the evidence because that evidence is relevant to the court's sanction, which Morrissey contends is excessive. Consistent with well-established appellate principles, we will view the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the Virginia State Bar, the prevailing party in the circuit court. El-Amin v. Virginia State Bar, 257 Va. 608, 612, 514 S.E.2d 163, 165 (1999); Gunter v. Virginia State Bar, 238 Va. 617, 619, 385 S.E.2d 597, 598 (1989).

---

[*] Former Disciplinary Rule 7-105(A) is substantially the same as current Virginia Rule of Professional Conduct 3.4(d).

<u>The Harris Matter</u>

Joel W. Harris was indicted by a multi-jurisdiction grand jury impaneled from the City of Richmond and the Counties of Chesterfield, Hanover, and Henrico for violation of certain felony drug laws.  He retained Morrissey as his defense attorney.  The Commonwealth terminated prosecution of the charges against Harris by <u>nolle</u> <u>prosequi</u>.

Morrissey hired an investigator to interview witnesses who had testified against Harris before the multi-jurisdiction grand jury.  The investigator interviewed John F. Buerkley, one of the multi-jurisdiction grand jury witnesses.  The investigator subsequently arranged an interview between Morrissey and Buerkley.  During the videotaped interview, Buerkley recanted much of the testimony that he had provided to the multi-jurisdiction grand jury.

Two days after this interview, a federal grand jury indicted Harris on federal narcotics distribution charges.  On the day that the federal grand jury indicted Harris, James B. Comey, an Assistant United States Attorney assigned to prosecute the Harris case, forwarded a letter dated February 4, 1997, by hand and facsimile, to Morrissey and attached a copy of Local Rule 57, promulgated by the United States

---

Former Disciplinary Rule 1-102(A)(3) has been replaced by Virginia Rule of Professional Conduct 8.4(b).

District Court for the Eastern District of Virginia.  Local Rule 57 prohibits lawyers from making public statements about the identity, testimony, or credibility of prospective witnesses, or from giving any opinion about the merits of a pending case.  Comey forwarded the letter and a copy of the local rule to Morrissey because Comey was concerned about the extensive media attention that the Commonwealth's case against Harris had received before the order of nolle prosequi was entered.  Comey testified that he "was specifically very concerned about some of the publicity that had gone on in this case while it was a state case.  And also [he] was . . . concerned about Mr. Morrissey's practice in defending cases and [Comey] wanted to make sure everybody was on notice that the federal rules were quite strict and quite clear."

On February 11, 1997, Comey learned that Morrissey intended to hold a press conference at 3:00 p.m. on that date and permit the media to view Morrissey's videotaped interview of Buerkley, who was a potential witness in the federal prosecution.  Comey immediately sent a letter, by facsimile, to Morrissey, warning him not to proceed with the press conference.  Morrissey received Comey's letter and contacted certain attorneys and solicited their opinions about whether he should proceed with the press conference.  Some of the attorneys, including a former Assistant United States

Attorney, advised Morrissey that he would have "a problem" if he proceeded with the press conference. Nonetheless, Morrissey held the press conference, issued a press release, and permitted the media to view the videotape of the Buerkley interview.

On February 12, 1997, the United States District Court for the Eastern District of Virginia issued a show cause order against Morrissey for his alleged willful violation of that court's Local Rule 57. During a hearing on the show cause motion, the court issued a contempt citation against Morrissey and gave the following warning to him: "I want it understood from here on out that this case will not be tried in the media. It will be tried in this Court. And any infractions of that admonition will be met with a harsh result."

On April 1, 1997, about two weeks before Harris' scheduled federal trial, Morrissey made statements to a newspaper reporter about the Harris case, which were subsequently published in the Richmond Times-Dispatch newspaper. Morrissey stated that the charges against Harris were "vindictive and vicious," and Morrissey questioned whether the charges should have ever been filed. Morrissey also remarked that if these charges had been filed when he was the Commonwealth's Attorney for the City of Richmond, the charges would have been "laughed . . . out of court."

The United States District Court issued another show cause order against Morrissey, and the court found that he had "willfully, intentionally, and contumaciously" violated Local Rule 57. The court entered an order which sentenced Morrissey to 90 days' imprisonment and three years' probation for two counts of contempt, and the court suspended his license to practice law in the federal court for the Eastern District of Virginia for two years. Morrissey's appeal from that judgment was affirmed by the United States Court of Appeals for the Fourth Circuit. See In re Joseph D. Morrissey, 168 F.3d 134 (4th Cir.), cert. denied, 527 U.S. 1036 (1999).

### The Chesterfield County Circuit Court Proceeding

In October 1997, Morrissey appeared in the Circuit Court of Chesterfield County to represent a criminal defendant during the sentencing phase of a trial. The Honorable William R. Shelton, who presided during the trial, fixed the defendant's punishment at 25 years' imprisonment with ten years suspended. After the court had pronounced its sentence, Morrissey stated in response: "That's outrageous, that is absolutely outrageous." The court cited Morrissey for contempt and sentenced him to ten days in jail. Then, Morrissey raised his voice and "took two or three steps from the counsel table towards the bench" and stated, "I have never seen a more jaded, more bitter, more angry jurist in my life."

6

Morrissey accused the court of sentencing Morrissey's client unfairly because of the court's purported dislike for Morrissey. The court sentenced Morrissey to 30 days in the county jail for violating Code § 18.2-456(3) and -456(4).

### Morrissey's Prior Disciplinary Record

In March 1986, Morrissey was found guilty of contempt of court in the Circuit Court of the City of Richmond. Morrissey lost his temper, shouted at the presiding judge, and continued to argue with the court after it had ruled. Morrissey was found guilty of contempt of court and fined $50. The court vacated the contempt conviction after Morrissey wrote a letter of apology.

In December 1987, the Circuit Court of the County of Henrico held Morrissey in contempt of court twice during the course of a single trial. He was fined $50 for the first offense and $100 for the second offense. In May 1988, the Circuit Court of Henrico County held Morrissey in contempt of court and imposed a fine of $50.

In December 1990, Morrissey was issued a private reprimand from the Virginia State Bar because he had failed to file timely a petition for appeal on behalf of a client, and he also failed to file a petition for a writ of habeas corpus on behalf of that client. He also failed to file a petition

7

for appeal to the Supreme Court of Virginia for that client, and he failed to inform the client of his omissions.

In June 1991, Morrissey, then Commonwealth's Attorney for the City of Richmond, appeared in the Richmond General District Court because he was upset that the court refused to accept a plea agreement that an assistant Commonwealth's Attorney had proposed to the court. After a heated exchange between Morrissey and the presiding judge, Morrissey wrote a letter to the judge which stated in part:

> "Although I was unfailingly courteous to you, it was evident to everybody that you were trying to bait me — perhaps so you could hold me in contempt. Please be assured . . . that if that behavior ever, ever, happens again, I will not be so kind as to merely draft you a letter of indignation."

The general district court found Morrissey guilty of contempt of court, the circuit court upheld the conviction, and the circuit court's judgment was affirmed by the Court of Appeals. Morrissey v. Commonwealth, 16 Va. App. 172, 428 S.E.2d 503 (1993).

In 1991, Morrissey was sentenced to jail for ten days, with five days suspended, for contempt of court because he was involved in a fist fight with opposing counsel in a criminal trial which was conducted in the Circuit Court of the City of Richmond. Thereafter, a three-judge court entered an order which reprimanded Morrissey for his unprofessional conduct.

8

In 1993, a three-judge court suspended Morrissey's law license for six months because of misconduct which constituted "dishonesty, fraud, deceit, or misrepresentation" in violation of former Disciplinary Rule 1-102(A)(4).  Morrissey, while serving as Commonwealth's Attorney for the City of Richmond, arranged a plea bargain in a rape prosecution.  Under the terms of the plea agreement, a felony rape charge against a criminal defendant was reduced to a misdemeanor, and the defendant's father paid $25,000 to the victim and $25,000 to charities designated by Morrissey.  At a hearing before the Circuit Court of the City of Richmond, when the court accepted the plea agreement, Morrissey directed the defendant's attorney not to tell the court about the part of the plea agreement relating to the defendant's father's contributions to charities of Morrissey's choice.  Morrissey also concealed this portion of the agreement from the victim, who had indicated to Morrissey that she wanted more than $25,000 as an "accord and satisfaction."

On appeal, this Court affirmed the order of suspension. Morrissey v. Virginia State Bar, 248 Va. 334, 343-44, 448 S.E.2d 615, 620 (1994).  We stated that "Morrissey's carefully orchestrated scheme was designed to secure something of value to Morrissey — the possibility that members of the donee charities would express their gratitude in the form of

9

political support in the forthcoming election" and that his conduct violated former Disciplinary Rule 8-101(A)(3).

In 1993, while still serving as the Commonwealth's Attorney for the City of Richmond, Morrissey unilaterally amended an arrest warrant for a criminal defendant, thereby reducing the charged offense from driving under the influence to reckless driving, a misdemeanor. Morrissey amended the arrest warrant without the knowledge or consent of the circuit court, in contravention of the Rules of Court. Morrissey received a sanction from the Virginia State Bar in the form of a dismissal with terms in which Morrissey agreed to write a letter of apology to the court.

### III.

Morrissey argues that the three-judge court "abused its discretion by arbitrarily and capriciously suspending [his] license to practice law for three years" because the suspension is inconsistent with the punishment imposed by the federal court in the Harris matter and the state court in the Chesterfield County Circuit Court proceeding. Continuing, Morrissey alleges that the suspension is inconsistent with discipline imposed in other attorney discipline cases, that the suspension is excessive and that the suspension is not warranted by Morrissey's prior disciplinary record. Morrissey's arguments are without merit.

10

The penalty imposed by a three-judge court in a disciplinary proceeding is viewed on appeal as prima facie correct, and it will not be disturbed unless, upon our independent examination of the whole record, we conclude that the court abused its discretion. El-Amin, 257 Va. at 620, 514 S.E.2d at 170. Additionally, a court has broad discretion to impose penalties, and our holding in Maddy v. First District Committee, 205 Va. 652, 658, 139 S.E.2d 56, 60 (1964), is equally pertinent here:

> "In arriving at the punishment to be imposed, precedents are of little aid, and each case must be largely governed by its particular facts, and the matter rests in the sound discretion of the court. The question is not what punishment may the offense warrant, but what does it require as a penalty to the offender, as a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession." (Citation omitted).

Accord Delk v. Virginia State Bar, 233 Va. 187, 193, 355 S.E.2d 558, 562 (1987); see also Gibbs v. Virginia State Bar, 232 Va. 39, 42, 348 S.E.2d 209, 211 (1986); Pickus v. Virginia State Bar, 232 Va. 5, 15, 348 S.E.2d 202, 208-09 (1986).

Applying these principles, we hold that the court did not abuse its discretion by suspending Morrissey's license for a term of three years. The evidence, which we will not repeat, clearly establishes that Morrissey has exhibited a pattern of disrespect for the judiciary, the rules of practice, and the laws of this Commonwealth. He has repeatedly been sanctioned

11

because of his misconduct, as exemplified by the number of contempt of court sanctions that he has received.  He has often exhibited disrespect for the authority of the courts in which he has appeared.

Contrary to Morrissey's assertions, he did not merely "aggressively" assert the rights of his clients.  Rather, the record demonstrates that he has repeatedly acted in flagrant disregard of the ethics and standards necessary to maintain public confidence in the legal profession.  A suspension of three years is appropriate to protect the public and deter others from committing similar misconduct.

We also disagree with Morrissey's contention that the suspension is inappropriate because he has been punished by the federal district court and the Circuit Court for Chesterfield County.  Morrissey ignores the distinction between a criminal contempt proceeding and an attorney disciplinary proceeding.  A proceeding to discipline an attorney is not a criminal proceeding, and the primary purpose of an attorney disciplinary proceeding is to protect the public.  Seventh Dist. Comm. v. Gunter, 212 Va. 278, 284, 183 S.E.2d 713, 717 (1971).  The purpose of punishment in such proceeding is to deter others and to demonstrate to the public that the Bar and the judiciary will maintain the ethics of the legal profession.  Maddy, 205 Va. at 658, 139 S.E.2d at 60.

12

By contrast, criminal contempt proceedings are punitive in nature and are designed to preserve the power and vindicate the dignity of the court. Leisge v. Leisge, 224 Va. 303, 307, 296 S.E.2d 538, 540 (1982); Steelworkers v. Newport News Shipbuilding, 220 Va. 547, 549, 260 S.E.2d 222, 224 (1979). Even though Morrissey has been punished by the federal district court and the Circuit Court for Chesterfield County, the purpose of the suspension imposed by the three-judge court in this disciplinary proceeding is to protect the public and to deter others from engaging in similar misconduct.

We observe that Morrissey's lack of civility and deplorable conduct during the hearing in the Circuit Court for Chesterfield County, alone, would have been sufficient to warrant the imposition of a three-year suspension. The judicial process cannot function and the public will have no confidence in the judicial process if attorneys are permitted to act disrespectfully toward the judiciary, intentionally ignore Rules of Court, and engage in conduct which is detrimental to the legal profession and the public interest.

We find no merit in Morrissey's contention that his prior record "is so remote in terms of time, place, and circumstances that it does not reflect upon Morrissey's current fitness to practice law." Our independent review of the record in this case indicates that during his career,

13

Morrissey has exhibited a pattern of misconduct and a lack of respect for the dignity, civility, and integrity of the legal profession.

We do not consider Morrissey's argument that federal Local Rule 57 is unconstitutional because, as his counsel conceded at the bar of this Court, Morrissey failed to raise that argument before the three-judge court.  Rule 5:25.

## IV.  Conclusion

Finding no merit in Morrissey's assignment of error, we will affirm the judgment of the court suspending Morrissey's license to practice law for a period of three years.

Affirmed.