# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 18th day of July, 2019.*

Present: Chief Justice Lemons, Justice Goodwyn, Justice McClanahan, Justice Powell, Justice Kelsey, Justice McCullough, and Senior Justice Millette

Joseph Dee Morrissey,                                                    Appellant,

 against            Record No. 181311
                   Circuit Court Nos. CL17001040-00, CL17004695-00

Virginia State Bar, *ex rel.* Third District Committee,                    Appellee.

                                        Upon an appeal of right from a
                                        judgment rendered by the Circuit Court of
                                        the City of Richmond.

Upon consideration of the record, briefs, and argument, the Court is of opinion that there is no error in the memorandum order that is the subject of this appeal.

A three-judge court found that Virginia attorney Joseph D. Morrissey violated Rules 5.1(b), 5.5(c), and 8.4(b) of the Virginia Rules of Professional Conduct. The judges concluded that these violations warranted the revocation of his license to practice law. Morrissey challenges this decision on a number of grounds.

## BACKGROUND

After the Virginia State Bar alleged that Morrissey had violated the rules of professional conduct, Morrissey elected to proceed before a three-judge court. *See* Code § 54.1-3935. At the conclusion of a five-day hearing in the Circuit Court for the City of Richmond, most of the claims were either withdrawn by the Bar or stricken or rejected by the court. The three-judge court concluded that Morrissey had violated Rules 5.1(b), 5.5(c), and 8.4(b). The court then prepared a memorandum opinion reflecting its decision.

I.      RULES 5.1(B) AND 5.5(C).

The charges related to Rules 5.1(b) and 5.5(c) stem from a court appearance by an associate of Morrissey's law firm, Ericka Battle. The three-judge court's memorandum opinion contains the following factual summary from the parties' stipulated facts. We supplement this stipulation with additional facts, as bracketed:

1. During all times relevant hereto, Respondent has been an attorney licensed to practice law in the Commonwealth of Virginia.

2. In 2013, David A. Jones ("Complainant"), hired Respondent to defend him against four criminal charges brought by his brother: a felony charge of malicious wounding, and three misdemeanor charges of domestic assault, brandishing a firearm, and violation of a protective order.

3. The matters were pending in the Juvenile and Domestic Relations District Court for King and Queen County.

4. By letter to the court, dated October 15, 2013, Respondent noted his appearance, stating, "I have been retained to represent Mr. Jones in the above matter," and provided his available dates.

5. The preliminary hearing on the felony charge and trial of the misdemeanor charges were scheduled for December 2, 2013, one of the dates provided by Respondent.

6. Respondent and one of his employees, Ericka Battle ("Battle"), a recent law school graduate, prepared the case, filed for discovery and corresponded with the prosecuting attorney. Respondent, Paul Gregorio, Esquire, and Ericka Battle, who was a first year Associate, all worked on the case including filing Discovery, corresponding with the Commonwealth's Attorney, and meeting with the Complainant, David Jones. Ericka Battle was a first year Associate who had previously handled by herself, numerous cases in the Commonwealth's Attorney's office. Further, Ms. Battle was not merely a law school graduate, but had passed the Bar, was licensed by the Virginia State Bar and was registered and listed with the Virginia State Bar as "Active, in Good Standing."

7. The prosecutor recalled corresponding with Respondent, and talking with Respondent and Battle about the matter. It is possible that Paul Gregorio also spoke with the prosecutor. Following these discussions the prosecutor determined that the evidence was insufficient to support the charges and agreed to seek an order of nolle prosequi from the court.

8. Upon learning that the Commonwealth had agreed to move for an order of nolle prosequi, Respondent sent Battle in his stead to represent Complainant at the December 2, 2013 hearing. [Morrissey could not attend due to a scheduling problem. Battle testified that Morrissey directed her to appear to represent the

2

client at this hearing; Morrissey denied ordering her to appear, testifying he communicated through his office manager.]

9.      When Ms. Battle appeared in court on December 2, 2013, she had a very friendly and jovial exchange with the Court.

Court: "Hi Ms. Battle, I was hoping to see Mr. Morrissey."
Ms. Battle: "No Your Honor, Mr. Morrissey is not here...You will only get me today." Both the Court and Ms. Battle laughed.

10.     The Commonwealth moved for an order of nolle prosequi as planned, and the court granted the motion and entered orders of nolle prosequi for all four charges. The court noted Battle as counsel for Complainant in its four orders, but other than standing in for Respondent, she took no other meaningful action on behalf of Mr. Jones.

11.     As of the date that she appeared in court for Complainant on December 2, 2013, Battle had passed the bar exam on July 30, 2013, was licensed by the Virginia State Bar on October 31, 2013, and on November 8, 2013, was registered and listed with the Virginia State Bar as "Active, in Good Standing." She had not, however, been administered the oath of fidelity by the Supreme Court of Virginia or any court as required by Virginia Code Section 54.1-3903. The Supreme Court of Virginia administered her the oath at a ceremony two days later on December 4, 2013.

12.     Virginia Code Section 54.1-3903 provides that:

> Before an attorney may practice in any court in the Commonwealth, he shall make the oath of fidelity to the Commonwealth, stating that he will honestly demean himself in the practice of law and execute his office of attorney-at-law to the best of his ability. An attorney who has qualified before the Supreme Court of Virginia shall be qualified to practice in all courts of the Commonwealth. An attorney who has qualified before a court other than the Supreme Court shall be qualified to practice only in the court which administered his oath. Each court in which an attorney intends to practice may require the attorney to produce satisfactory evidence of his licensure or authorization.

(This section does not reference those 3rd-year law students and 1st-year Associates who have third-year practice papers. In the

3

instant case, Ms. Battle was a 1st-year Associate who had handled numerous cases pursuant to her 3rd-year practice certificate.)

13. By letter to Complainant, dated December 2, 2013, Battle explained that after talking with the Commonwealth's Attorney about inconsistencies in the victim's statements to police, the Commonwealth agreed to seek an order of nolle prosequi, the effect of which she also explained to Complainant.

14. By letter, dated March 20, 2015, Respondent submitted an answer to the bar complaint candidly acknowledging that his associate had not been sworn in when he sent her to court. He noted that she had a third-year practice certificate, and that she had appeared in numerous criminal cases while serving as an intern at the Commonwealth's Attorney's office. Battle had second chaired dozens of cases with Respondent in court matters ranging from DUI to 1st degree murder.

15. Battle's third-year practice certificate expired by operation of law when she passed the bar exam. (Rules of Court, Part 6, Section IV, Paragraph 15.c.l)

16. Respondent explained that Battle did research and worked as a second chair under his supervision.

17. When asked why he sent Battle to the hearing by herself, Respondent said that it was because it was a routine nolle prosse. He could not recall sending her to court by herself at any other time.

18. Battle provided the bar with a similar explanation of her role: that she worked up cases for Respondent, interviewed witnesses, prepared documents for his review and went to court with him on occasion. When asked, she said that she could not recall examining witnesses or performing any other courtroom functions.

II. RULE 8.4(B).

The uncontested facts establish that Morrissey had sexual relations with a minor, Myrna Pride, who was seventeen years old at the time. Morrissey was fifty-five years old. The parties presented conflicting evidence concerning whether Morrissey knew Pride's actual age. Morrissey and Pride later married. Morrissey entered a guilty plea pursuant to *North Carolina v.*

4

*Alford*, 400 U.S. 25 (1970). He was convicted on December 12, 2014 of the crime of Contributing to the Delinquency of a Minor, in violation of Code § 18.2-371. He was sentenced to 12 months in jail with six months suspended for five years conditioned upon good behavior. The court gave him credit for time served and allowed him to serve his sentence on work release. *Id.*

The memorandum order recites the following stipulated facts in connection with the violation of Rule 8.4:

> 1. At all times referenced herein Respondent has been an attorney licensed to practice law in the Commonwealth of Virginia.
>
> 2. In July 2014, Respondent was charged with possession of child pornography, distribution of child pornography, taking indecent liberties with a child by a person in a supervisory role, contributing to the delinquency of a minor, and use of a communications system to solicit certain offenses involving children.
>
> 3. Prior to the scheduled trial in December 2014, Respondent entered an Alford Plea to one misdemeanor charge of contributing to the delinquency of a minor. The recitation of the evidence that the Commonwealth would have presented to prove the charges is set forth in the Alford Plea (Exhibit A). The Alford Plea included an attached exhibit titled "Text Timeline" that included explicit and sexually graphic text messages to and from Respondent and MP and nude photographs of MP requested by Respondent.
>
> 4. The remaining charges against Respondent were dismissed. Respondent was sentenced to six months in jail, which was reduced to ninety days on work release pursuant to the plea agreement.
>
> 5. The Morrissey II[1] charges were dismissed by the Henrico County Circuit Court pre-trial due to a clause in the Alford Plea

---

[1] In the proceedings below, the Bar referred to the criminal charges brought against Morrissey in June 2014 as "Morrissey I." Those charges included a charge of indecent liberties, electronic solicitation of a minor between the age of 15 and 18, possession of child pornography, distribution of child pornography, and contributing to the delinquency of a minor. In January 2015, after the entry of Morrissey's *Alford* plea, a special prosecutor brought additional charges of felony uttering a forged public record, felony conspiracy to utter a forged record, felony inducing perjury, and perjury. The Bar referred to these charges as "Morrissey II." The charges stemmed from the allegation that Morrissey had employed a forged court order during the

5

agreement that stated that the Commonwealth agreed to "withhold any other potential criminal charges against the Defendant, such as conspiracy to suborn perjury, conspiracy to obstruct justice, etc.," and because the Court determined that the double jeopardy rights of the Respondent were implicated.

6. Following the dismissal of the Morrissey II charges, the Virginia State Bar ("VSB") began its investigation and issued subpoenas *duces tecum* to four of Respondent's criminal defense attorneys: Amy Austin, Anthony Troy, James Maloney, and Ward Armstrong. Mr. Troy, Mr. Maloney, and Mr. Armstrong filed Motions to Quash the subpoenas and Ms. Austin wrote a letter to the VSB objecting to the disclosure of Respondent's file based on attorney-client privilege.

7. On March 4, 2016, at a hearing before the Henrico County Circuit Court, Respondent agreed to turn over his attorneys' files to the VSB, omitting nothing.

8. Respondent filed a Motion to Quash the VSB's subpoena *duces tecum* to Sensei Enterprises and, after a hearing in the Henrico County Circuit Court, the Honorable Lee A. Harris, Jr. denied the Motion to Quash and ordered Sensei Enterprises to comply with the VSB subpoena *duces tecum*.

9. In the "Defendant's Position" section of the Alford Plea, Respondent stated that 1) he and MP would have testified that they did not have sexual intercourse on August 20, 2013; 2) beginning "the evening of August 20, 2013 and continuing through the morning of August 21, 2013 and beyond, [Brittaney] McKinney could and did author and send the salacious text messages and nude photographs contained in the Commonwealth's evidence"; and, 3) "[b]oth Mr. Morrissey and [MP] would have testified and denied sending the text messages and photographs to one another or third parties."

10. Respondent's former legislative assistant, Carter Nichols, has testified that Respondent told Carter that he sent the sexually explicit text messages to MP, but he thought she was an adult. Mr.

---

hearing on Morrissey's *Alford* plea. The circuit court dismissed the indictments in Morrissey II on the basis that the immunity provision of Morrissey's plea agreement foreclosed this additional prosecution and because this new round of charges implicated Morrissey's double jeopardy rights. *See Commonwealth v. Morrissey*, Record No. 0559-15-2, 2015 WL 5554227 (Sept. 22, 2015) (retracing the procedural history of the case and dismissing the Commonwealth's appeal for lack of jurisdiction).

Nichols has also testified that Respondent told Mr. Nichols that he had nude photographs of MP on his phone and that he sent those to his friend, Abe Massad.

The judges concluded that these violations, in conjunction with Morrissey's disciplinary history, warranted the revocation of his license to practice law.

ANALYSIS

To prove that an attorney has violated the Rules of Professional Conduct, the State Bar must prove the violation by clear and convincing evidence. *Livingston v. Virginia State Bar*, 286 Va. 1, 10 (2013). In reviewing a disciplinary decision, "we will make an independent examination of the whole record." *Green v. Virginia State Bar*, 274 Va. 775, 783 (2007). Although we do not accord the findings of the three-judge court "the weight of a jury verdict, [their] conclusions will be sustained unless it appears they are not justified by a reasonable view of the evidence or are contrary to law." *Id.*

I.  ASSUMING A THREE-JUDGE COURT MUST MAKE FACTUAL FINDINGS IN A MEMORANDUM OPINION, THE FINDINGS OF THE THREE-JUDGE COURT HERE SATISFY THE RULE.

As a threshold matter, Morrissey contends that the three-judge court erred by failing to make factual findings. By statute, an attorney facing discipline can elect to proceed either before the Disciplinary Board or before a three-judge court. Code § 54.1-3935(A). This statute broadly incorporates by reference "[t]he rules and procedures set forth in Part Six, Section IV, Paragraph 13 of the Rules of Supreme Court of Virginia," stating that they "shall govern any attorney disciplinary proceeding before a three-judge circuit court." *Id.* Part Six, Section IV, Paragraph 13 of our Rules (the "disciplinary procedures") establishes the procedures employed for disciplining, suspending, and disbarring attorneys. Paragraph 13-18(P) of the disciplinary procedures specifies that "[u]pon disposition of a matter, the Board shall issue the Summary Order. Thereafter, the Board shall issue the Memorandum Order. A Board member shall prepare the Summary Order and Memorandum Order for the signature of the Chair or the Chair's designee. Dissenting opinions may be filed." The definitions found in the disciplinary procedures define a "Memorandum Order" as "the opinion and order of the Board entered following a Disciplinary Proceeding that shall contain a brief statement of the findings of fact

7

[and] the nature of the Misconduct shown by such findings of fact . . . ." Va. S. Ct. R., Part 6, § IV, ¶ 13-1.

Morrissey argues that the incorporation by reference of the disciplinary procedures in Code § 54.1-3935(A) means that the three-judge court must issue a memorandum opinion that includes factual findings. In response, the Bar notes that the provision of the disciplinary procedures on which Morrissey relies applies to the Board exclusively, not to the three-judge court, and, moreover, judges generally are not required to issue written findings of fact. When judges are required to make factual findings, it is by express directive,[2] not by oblique reference.

We will assume, without deciding, that the incorporation of the disciplinary procedures by reference in Code § 54.1-3935(A) requires factual findings in a memorandum opinion issued by a three-judge court. However, as noted above, the memorandum opinion of the three judges does contain extensive factual findings. Morrissey responds that these factual findings are not adequate. We disagree. Nothing in the statute or the rules requires the factfinder in a disciplinary hearing to resolve every factual point of disagreement with a corresponding factual finding. To the contrary, the definition of a memorandum opinion requires "a brief statement of the findings of fact." Va. S. Ct. R., Part 6, § IV, ¶ 13-1. Assuming for the purposes of this opinion that factual findings are required, the three-judge court's memorandum opinion satisfies the requirements of the rule.

II.     RULES 5.1(B) AND 5.5(C).

Morrissey argues that he was improperly convicted of violating Rule 5.1(b). He takes the view that the rule is implicated only when a supervisor evinces an "'ostrich-like' lack of oversight over on-going undertakings or a blind eye toward continued improprieties." He contends that there was no evidence of "supervisor abdication." Instead, he notes, this was "a one-time incident brought about by unusual circumstances." *Id.* at 25. In response, the Bar notes that the text of the rule does not require multiple violations or systemic deficiencies.

---

[2] *See, e.g.*, Code § 8.01-654(B)(5) (requiring a trial court reviewing habeas corpus petitions to set out in the final order its "findings of fact and conclusions of law"); Code § 20-107.1(F) ("In contested cases in the circuit courts, any order granting, reserving or denying a request for spousal support shall be accompanied by written findings and conclusions of the court identifying the factors in subsection E which support the court's order.").

Rule 5.1(b) states:

> A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.

Parsing the rule according to its plain text, it is undisputed that Morrissey had "direct supervisory authority" over Battle. Battle was a recent law school graduate and Morrissey was one of the founders of the firm bearing his name. He was her supervisor. Battle testified that Morrissey directed her to appear in a circuit court case (a fact Morrissey denied). When she appeared in court at Morrissey's command (or prodding), Battle had passed the bar exam, but had not taken the oath of office. The record does not reflect *any efforts* by Morrissey, much less the "reasonable efforts" the rule requires, to ensure that Battle could properly appear in court. At no point did Morrissey inquire whether Battle had taken the oath of office. Her appearance without having taken the oath of office was in violation of the Rules of Professional Conduct. *See* Code § 54.1-3903 (requiring attorneys to take the oath of office prior to practicing law) and Rule 5.5(c) (prohibiting a lawyer from practicing law in violation of the regulation of the legal profession). Making sure a recent law school graduate has actually taken the oath of office before representing clients in court is hardly a burdensome requirement for supervising attorneys. The evidence was sufficient to show by clear and convincing evidence that Morrissey violated the terms of Rule 5.1(b).

Morrissey advances a number of additional arguments. For example, he emphasizes that the problem was the absence of a simple oath-taking formality and that Battle was competent to handle the hearing. Morrissey also observes that Battle did not remind him or his office manager that she had not yet taken the oath. In addition, he notes that Battle had not made any other such appearances during her time with the firm. Finally, he points to the fact that she had made statements suggesting she was now a lawyer, and that she took the oath a very short while after this hearing. These arguments all go towards *mitigation* of the rule violation, not to *the fact of* the rule violation.

With respect to Rule 5.5(c), Morrissey argues that the evidence does not support a finding that he knowingly or otherwise "assisted" a breach of the ethics rules. The Bar responds that Morrissey told Battle to go to court to have a case "nolle prossed." Had he not taken this step, Battle would not have appeared in court.

9

Rule 5.5(c) provides:

> A lawyer shall not practice law in a jurisdiction in violation of the
> regulation of the legal profession in that jurisdiction, or assist
> another in doing so.

Battle practiced law by appearing in court and representing a client of the firm in a criminal proceeding. She did so in violation of the regulation of the legal profession by appearing prior to her having taken the required oath. *See* Code § 54.1-3903. Morrissey either knew or should have known that Battle had not yet taken the oath. Battle testified that she told Morrissey that she needed to take time off to attend her swearing in on December 4, 2013. Without ensuring that she took the oath, he ordered her to appear in court on December 2, 2013. This evidence clearly and convincingly suffices to establish that Morrissey assisted another in appearing in court "in violation of the regulation of the legal profession in that jurisdiction," thereby violating Rule 5.5(c).

III.     RULE 8.4(B).

As to the finding that Morrissey violated Rule 8.4(b), Morrissey's arguments center on the contention that the Bar failed to establish a wrongful act "that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law." In his view, there is no "nexus" between his conviction for contributing to the delinquency of a minor and his fitness to practice law. Rule 8.4(b) states that "[i]t is professional misconduct for a lawyer to . . . commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law." Morrissey entered an *Alford* plea to a charge of contributing to the delinquency of a minor. A conviction for contributing to the delinquency of a minor certainly constitutes a "criminal act" and a "wrongful act" for purposes of Rule 8.4(b). From that point of departure, two narratives emerge concerning whether this conviction reflects adversely on Morrissey's honesty, trustworthiness, or fitness to practice law.

Morrissey observes that in *Tasker v. Commonwealth*, 202 Va. 1019, 1025 (1961), we concluded that contributing to the delinquency of a minor was not a crime of "moral turpitude" and, therefore, was not a conviction that could be used for impeachment purposes. He further notes that contributing to the delinquency of a minor does not fall within the definition of a

10

"Crime," as specified in Part 6, Section IV, Paragraph 13-1 of the disciplinary procedures.[3] In addition, he points out that his relationship with the Myrna Pride was consensual, she is now his wife, and they are raising a family together. He argues that the Bar did not establish his knowledge that she was below the age of consent. In short, he argues that his conviction for contributing to the delinquency of a minor does not adversely reflect on his honesty, trustworthiness, or fitness to practice law.

The Bar responds that the facts surrounding the crime, in addition to the crime itself, reflect poorly on Morrissey's trustworthiness and fitness as a lawyer. The Bar points out that Morrissey, in fact, knew Pride's true age, Pride was an employee subject to his supervision, Morrissey engaged in sexual relations with her in his law office, and then he bragged about it. The Bar argues that Morrissey should have been "guiding associates and law firm staff in the ethical practice of law. Instead, his misconduct shows a lack of judgment and clear disregard for the rule of law."

We review the evidence in the light most favorable to the party that prevailed below. *Green*, 274 Va. at 783. Morrissey testified that he was not aware of Pride's actual age. At the hearing, he pointed to, among other things, the fact that she listed an incorrect birthdate on her job application. The date she listed indicated she was 22 years old and a college student. The Bar produced ample evidence that Morrissey actually knew Pride was a minor. Morrissey first met Pride at the Foot and Ankle Center, where she worked. As he was admiring Pride, another employee informed him that she was underage. When Morrissey began talking with her, she told him that she was about to graduate from high school. After Pride mentioned an interest in becoming a lawyer, Morrissey encouraged her to set up an interview with his law office. Pride began working for Morrissey as a receptionist in August of 2013. While working for Morrissey,

---

[3] The chief significance of the definition of "Crime" with a capital "C" in the disciplinary procedures is that upon conviction of such a "Crime," the Bar will summarily enter an order of suspension. *See* Va. S. Ct. R., Part 6, § IV, ¶ 13-22(A). "Crime" is defined to include, among other things, state and federal felonies, and offenses "involving theft, fraud, forgery, extortion, bribery, or perjury." Va. S. Ct. R., Part 6, § IV, ¶ 13-1. As Morrissey acknowledges, Appellant's Br. at 33, conviction of such a "Crime" is not necessary for a finding that an attorney violated Rule 8.4, which is more broadly written. Rule 8.4(b) requires a "criminal or deliberately wrongful act."

11

in order to visit clients at the jail, she completed a City Jail application in which she disclosed her true age. Morrissey signed the application.

Morrissey also sought to explain away sexually charged text messages and photographs he and Pride sent back and forth, positing it was a jealous former lover of Pride's who hacked into her computer and manipulated her messages. Forensic evidence established, however, that the salacious texts and photographs originated from Morrissey and Pride's phones.

The practice of law demands more than technical proficiency. A lawyer is "an officer of the legal system" whose "conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs." Va. Sup. Ct. R., Part 6, § II, Preamble. We acknowledge that conviction for a crime does not necessarily equate to a violation of Rule 8.4(b). Here, the record indicates that Morrissey encouraged an underage girl to apply to his firm, knowing she was below the age of legal consent, and hired her as a receptionist. In short order, he engaged in a sexual relationship with her that began in the law office conference room. Despite his guilty plea, he tries to shift the blame to others. The facts in the record justify a finding by clear and convincing evidence that Morrissey's violation of a criminal statute and the attendant circumstances call into question his honesty, trustworthiness, and fitness to practice law.

IV. MORRISSEY'S EXTENSIVE DISCIPLINARY RECORD FULLY JUSTIFIES THE SANCTION OF REVOCATION.

Finally, Morrissey argues that the sanction imposed – revocation of his law license – "is unduly harsh in light of the nature of the violations." The Bar responds that the sanction imposed is entirely appropriate.

"The penalty imposed by a three-judge court in a disciplinary proceeding is viewed on appeal as *prima facie* correct, and it will not be disturbed unless, upon [this Court's] independent examination of the whole record, [this Court] conclude[s] that the court abused its discretion." *Morrissey v. Virginia State Bar*, 260 Va. 472, 479 (2000). The court's sanction will not be disturbed unless an independent review of the record reveals the penalty was not justified or contrary to law. *Gay v. Virginia State Bar*, 239 Va. 401, 407 (1990).

Three points stand out with respect to an appropriate sanction. First, rather than take responsibility, Morrissey tries to shift the blame for his actions to others: to Battle, to Pride, to Pride's former lover, and so on. The fault, however, does not lie with others. Second, these

12

infractions occurred barely one year after Morrissey regained his law license. Third, and most significantly, we must weigh into the balance the long and notorious book of Morrissey's disciplinary history - to which one more chapter has now been added. His disciplinary history consists of eight actions: three Dismissals with Terms, a Private Reprimand, a Public Reprimand, a Suspension of his license to practice law for six months, a Suspension of his license to practice law for three years, and the Revocation of his license to practice law in 2003. The three-judge court also admitted a Memorandum Opinion Order from the United States District Court, Eastern District of Virginia, which disbarred Morrissey from practicing law before that Court. This voluminous history establishes Morrissey's chronic unwillingness to practice law in conformity with the rules that govern our profession. The sanction of revocation is fully justified.

We affirm the decision of the three-judge panel.

This order shall be published in the Virginia Reports and shall be certified to the Circuit Court of the City of Richmond.

A Copy,

Teste:

Douglas B. Robelen, Clerk